UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:00-CV-17-J

SAMUEL EVERETT ALDRIDGE                                                    PLAINTIFF

v.                                **MEMORANDUM OPINION**

4 JOHN DOES; CLIFF GILL; BILL ADAMS
DR. RICHARD M. BUURMAN                                                   DEFENDANTS

This matter is before the Court upon defendants' Motion for Summary Judgment (DN 76). The Court has reviewed the record and briefs of the parties and, for the reasons that follow, summary judgment is granted to the defendants.

**BACKGROUND AND PROCEDURAL HISTORY**

Samuel Everett Aldridge ("Aldridge") was convicted of Manslaughter in the 1st Degree in Livingston Circuit Court and sentenced to serve sixteen years. Aldridge entered the McCracken County Regional Jail ("MCRJ") on December 4, 1997, and remained there until January 29, 1999, when he was transferred to a state institution. At the time he entered MCRJ, Aldridge was experiencing health problems, including a cardiac condition, hypertension, and the effects of a lumbar diskectomy. He was taking prescription medications for these conditions.

Seeking monetary relief, Aldridge has sued the MCRJ by and through its jailer Cliff Gill, 4 John Does, Bill Adams and Dr. Richard Buurman, both their individual and official capacities, for violation of his civil rights pursuant to 42 U.S.C. §1983.[1] In the Complaint, Aldridge asserts that:

---

[1] McCracken County Judge Executive Danny Orazine was also named as a defendant in plaintiff's Complaint. However, by Order of this Court dated May 10, 2000, Orazine was dismissed as a defendant. That dismissal was not appealed by plaintiff.

1) defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment; 2) he was housed in a segregation cell for fourteen months without reason and was kept in jail in excess of the state statutory time limit in violation of the Fourteenth Amendment, and 3) the defendants violated his right of access to the courts in violation of the First Amendment.

This Court initially dismissed the plaintiff's action as untimely because the claims had accrued more than a year before the filing of the Complaint on January 24, 2000. On appeal, the United States Court of Appeals, Sixth Circuit vacated the dismissal and remanded for consideration of the effect of the "mailbox rule" on the computation of the limitations period and whether any pursuit of administrative remedies had tolled the statute of limitations. On remand, this Court again dismissed the action for Aldridge's failure to pursue administrative remedies and because the Complaint was untimely even if deemed to be filed as of the date of Aldridge's signature.

Aldridge appealed the second dismissal to the United States Court of Appeals, Sixth Circuit, which again remanded the case for consideration of whether any pursuit of administrative remedies had tolled the statute of limitations. On remand, this Court concluded that the existence of a grievance procedure was a factual issue, but that defendants' conduct was consistent with the irrelevance of any formal grievance procedure. This Court further held that the U.S. Department of Justice investigation at MCRJ was adequate to toll the running of the statute of limitations.

Aldridge's complaint alleges numerous constitutional violations from his being housed in the MCRJ for thirteen months. He alleges that the defendants were deliberately indifferent to his serious medical needs by 1) repeatedly withholding his medication; 2) unilaterally changing his medication without the consultation of a physician; 3) refusing to respond to his requests for medical attention during episodes of angina and serious swelling of the lower extremity; 4) refusing to take

his blood pressure reading; and 5) providing him with dangerously excessive doses of heart medication. Aldridge claims that on the single occasion he was allowed to see the jail physician, Dr. Richard Buurman refused to stop reading a magazine to perform any type of examination or attend to his complaints. He further alleges that, as a result of these acts and omissions, he has suffered unnecessary pain and that his medical condition has been exacerbated to the point that treatment is now difficult or impossible.

Next, the plaintiff alleges that the conditions of his confinement constituted cruel and unusual punishment in that he was housed in an isolation cell for his entire stay at the MCRJ without being convicted of any administrative offense. He alleges that he was allowed out of his cell for exercise only one hour per week until sometime in November of 1998 when, in response to the Department of Justice investigation, he was allowed out of his cell three to four times per week.

Finally, Aldridge asserts that his First Amendment rights were violated when he was denied access to a law library or other legal materials, which resulted in missed filing deadlines and dismissal of litigation. He further alleges that he was informed that he would not be moved to the general inmate population unless he abandoned his legal materials. Additionally, Aldridge alleges that attempts were made to interfere with his presentation of complaints to the Department of Justice.

## **STANDARD OF REVIEW**

Summary judgment is proper if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying Rule 56(c), a court views the

evidence in a light most favorable to the non-movant, Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Not every issue of fact or conflicting inference presents a genuine issue of material fact, Street v. Bradford & Co., 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case," Hartsel v. Keys, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence. To support his position, he must present evidence on which the trier of fact could find for the plaintiff. Id, citing Anderson v. Liberty Lobby, Inc. at 251-52.

The United States Department of Justice issued a report dated October 19, 1999 in which it found several general constitutional deficiencies were present in various areas of the MCRJ operation, including the area of medical treatment of inmates. This is a very thorough report that raises constitutional issues that this Court takes very seriously. Both parties have referenced the report, and there has been no objection to its admissibility. This Court has reviewed and considered the report in addition to the other evidence of record. However, the general findings of constitutional violations contained in the Department of Justice report are not binding upon this Court, nor are they dispositive of the issues presented in plaintiff's complaint. In evaluating the constitutional claims of this particular plaintiff, the Court must consider the specific facts and circumstances applicable to this plaintiff, and does not rely upon the general findings contained within the report.

**ANALYSIS**

I.  <u>Defendants argue that Aldridge's Complaint must be dismissed pursuant to the Prison Litigation Reform Act</u>.

In their Motion for Summary Judgment, defendants first argue that Aldridge's Complaint must be dismissed pursuant to the Prison Litigation Reform Act ("PLRA") for his failure to exhaust the administrative remedies available to him through the MCRJ grievance procedure. Section 7(a) of the Prison Litigation Reform Act provides that,

> [n]o action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. §1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Defendants have previously made this argument before the Court. On August 13, 2003 on the issue of "availability" of administrative remedies, this Court found that whether notice of a grievance procedure was posted in the cells appears to present an issue of fact, and the defendants' conduct was consistent with the irrelevance of any formal grievance procedure. Under these circumstances, the Court declines to revisit an issue that it has previously ruled upon. The availability of a grievance procedure presents an issue of material fact and summary judgment would be inappropriate on this issue alone. Though the Court declines to revisit this issue, it finds the unpublished Sixth Circuit decision of <u>Brock v. Kenton County, KY</u>, 93 Fed.Appx. 793 (6th Cir. 2004) to be very persuasive.[2]

---

[2]<u>Brock</u> is an unpublished Sixth Circuit decision, decided after the issuance of the Sixth Circuit's opinions in this case, and after the issuance of this Court's August 13, 2003 Order. In <u>Brock</u>, the Sixth Circuit upheld dismissal of a plaintiff's §1983 complaint on the basis of failure to exhaust administrative remedies under 42 U.S.C. §1997e(a). This dismissal was despite the plaintiff's allegations that 1) he was unaware of the existence of an administrative grievance procedure, 2) the administrative procedure had never been used by any juvenile prisoner before, 3) the prison officials never gave him any information about the grievance system, and 4) he did not in fact know that a grievance system existed. Citing Eighth Circuit case law, the Court found

5

The defendants' second argument under the PLRA seeks summary judgment by alleging that the plaintiff cannot establish through medical proof that he suffered a physical injury as a result of the alleged mistreatment by defendants. Section 7(e) of the Prison Litigation Reform Act (42 U.S.C. §1997e(e)) provides that, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." However, this argument fails under Section 7(e) of the PLRA because the provision is a limitation on recovery only, and does not operate so as to bar a suit by a prisoner. Furthermore, the plaintiff has also alleged damages resulting from constitutional violations in addition to those resulting from physical and mental injuries. These are separate categories of damages, and this Court does not read Section 7(e) of the PLRA as an outright bar to either category. For these reasons, summary judgment based upon the PLRA is denied.

II.     Defendants argue that Aldridge's Complaint must be dismissed as it is barred by the applicable statute of limitations.

On August 13, 2003, this Court held that Aldridge's participation in the Department of Justice investigation was adequate to toll the running of the statute of limitations, as Aldridge had every reason to believe that the investigation would address the problems of which he complains in the instant action. This ruling is now the law of the case, and will be followed consistently

---

that a prisoner's subjective beliefs under Section 1997e(a) analysis are irrelevant – if administrative remedies are available, the prisoner must exhaust them. Brock at 798. The Court also noted that the "availability" of a grievance procedure may be thwarted by prison officials' actions but, nonetheless, a prisoner must first make at least some affirmative effort to comply with the administrative procedure. Id. Thus, the prison officials at MCRJ were under no affirmative duty to notify prisoners of available administrative remedies. Under Brock, dismissal of Aldridge's claims *sua sponte* would be required, as he failed to attempt to comply with the administrative procedure in place. However, this Court has previously ruled on the issue of exhaustion of remedies, and declines to use Brock as the basis for dismissal of Aldridge's claims.

throughout the course of this litigation, U.S. v. Moored, 38 F.3d 1419, 1421 (6th Cir. 1994). For this reason, defendants' argument for dismissal on the statute of limitations is denied.

III.  Defendants argue that there is no evidence that Aldridge's constitutional rights were violated.

Title 42 U.S.C. §1983 provides in pertinent part as follows:

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

The first inquiry in any §1983 action is whether a deprivation of a right secured by the Constitution or laws of the United States has occurred. Baker v. McCollon, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); Willliams v. Bass, 63 F.3d 483, 485 (6th Cir. 1995). To establish a right to relief under 42 U.S.C. §1983, a plaintiff must allege at least two elements: (1) that he has been deprived of a right secured by the Constitution and laws of the United States; and (2) that the defendants deprived him of that right while acting under color of state law. Searcy v. City of Dayton, 38 F.3d 282, 286 (6th Cir. 1994).

When asserting a claim under §1983, a plaintiff must allege specific facts. Chapman v. City of Detroit, 808 F.2d 459, 465 (6th Cir. 1986). The requisite facts must provide adequate detail to support the claims, such as specific incidents of deprivation of plaintiff's rights, how each defendant was involved, and the names of other persons involved, noting specific dates and places. The specific facts must also explain how the challenged conduct or condition personally injured plaintiff himself, Cotner v. Hopkins, 795 F.2d 900, 902 (10th Cir. 1986), and how each defendant is responsible for the alleged injuries, Smith v. Rowe, 761 F.2d 360, 369 (7th Cir. 1985).

A complaint filed under §1983 must show a causal connection between the named defendant and the alleged constitutional deprivations. This means that a plaintiff must allege specific actions taken by the defendant that were the proximate cause of the constitutional injury allegedly sustained by the plaintiff, Cameron v. City of Pontiac, Mich., 813 F.2d 782, 786 (6th Cir. 1987). "Congress did not intend §1983 to attach where causation is absent," Deaton v. Montgomery City, 989 F.2d 885, 889 (6th Cir. 1993). Aldridge's complaint meets these preliminary requirements.

    A.       Plaintiff's Eighth Amendment Claim of Cruel and Unusual Punishment

The Eighth Amendment to the United States Constitution states that, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Eighth Amendment has been interpreted to require prisons to provide for the basic human needs of their inmates, imposing duties upon prison officials to ensure that inmates receive adequate food, clothing, shelter, and medical care, including mental health care, Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Eighth Amendment claims based on conduct – not the penalty formally imposed for a crime – require inquiry into the state of mind of the acting officials, Wilson v. Seiter, 501 U.S. 294, 296-97, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). This standard applies to the states and thus, to the matter at bar through the Fourteenth Amendment, U.S. CONST. amend. XIV; Wilson, 501 U.S. at 302.

To state a cognizable claim under the Eighth Amendment concerning medical care of prisoners, an inmate must "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment, Estelle, 429 U.S. 97, 104 (1976) (quotation marks and citations omitted). "The Court distinguished 'deliberate

indifference to serious medical needs' from an inadvertent failure to provide adequate medical care, which does not constitute cruel and unusual punishment for purposes of the Eighth Amendment." Boretti v. Wiscomb, 930 F.2d 1150, 1153 (6th Cir. 1991) citing Estelle, 429 U.S. at 105).

Mere negligence is insufficient to state a cause of action for deliberate indifference to medical needs. Instead, the conduct "must demonstrate deliberateness tantamount to intent to punish," Horn v. Madison County Fiscal Court, 22 F.3d 653, 660 (6th Cir. 1994) (citing Roberts v. City of Troy, 773 F.2d 720, 724 (6th Cir. 1995). While "an express intent to inflict pain is not required[,] . . . obduracy and wantonness are indications of deliberate indifference," Boretti, 930 F.2d at 1153 (citations omitted). Correspondingly, a prisoner's disagreement with the course of his medical treatment (essentially a medical malpractice claim) is not cognizable under §1983. See Estelle, 429 U.S. at 107; Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

When inquiring into "deliberate indifference," a court must ask both 1) if the officials acted with a sufficiently culpable state of mind and 2) whether the alleged wrongdoing was "objectively 'harmful enough' to establish a constitutional violation." Hudson v.McMillan, 503 U.S. 1, 2, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (quoting Wilson, 501 U.S. at 298, 111 S.Ct. 2321; Caldwell v. Moore, 968 F.2d 595, 602 (6th Cir. 1992).[3] The objective component of a "deliberate indifference" claim is governed by "contemporary standards of decency." Hudson, 503 U.S. at 8-9, 112 S.Ct. 995. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those

---

[3]Deliberate indifference has been defined as a subjective awareness of a substantial risk of harm. Farmer v. Brennan, 511 U.S. 825, 829, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). An official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." Id. At 837-38, 114 S.Ct. 1970.

9

needs are serious."[4]  Id. At 9, 112 S.Ct. 995.  In this circuit, the inmate must show that he is incarcerated under conditions posing a "substantial risk of serious harm."  Napier v. Madison County, 238 F.3d 739, 742 (6th Cir. 2001).  Allegations of denial of medical treatment based on a delay in treatment are to be gauged by examining the effect of the delay in treatment.  An "inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed," Napier at 742.

Aldridge claims that his medications were improperly dispensed or denied on numerous occasions, that his medication was unilaterally changed without consultation with a physician, that many of his requests to see a doctor went without response, that his requests for help during episodes of chest pain and lower extremity swelling were ignored, and that the jail did not adequately monitor his seriously elevated blood pressure.  Assuming that the allegations are true, Aldridge has failed to provide any medical evidence to show that he suffered a detrimental effect from the improperly dispensed, withheld or changed medications, delays in seeing a physician, or the insufficient monitoring of his blood pressure.  Aldridge has proffered no expert medical testimony to show any detrimental effect upon his mortality or morbidity from any of these alleged deficiencies.

This Court finds that the alleged deprivations and delay in medical care during Aldridge's incarceration do not rise to the level of a constitutional violation.  He has failed to demonstrate the seriousness of the deprivation by showing that it adversely affected his morbidity or mortality. There is no evidence to suggest the episodes of chest pain, swelling of the extremities, difficulty urinating, and back pain were in fact seriously injurious or that the alleged improper dispensing of

---

[4]Medical needs are "serious" if they require immediate medical attention, Caldwell v. Moore, 968 F.2d 595, 602 (6th Cir. 1992).

10

medications were sufficient to pose a serious risk of harm to Aldridge. There is no evidence to suggest that denial of Aldridge's requests to see a physician resulted in the type of effect on his morbidity or mortality as contemplated by Napier.

With regard to Aldridge's allegations concerning his medications, there is no evidence that the alleged improper dispensing of the medications was intentional or deliberate on the part of MCRJ officials. In fact, there are several instances noted in Aldridge's diary when he called a dispensing error to the attention of MCRJ staff, and the error was corrected. The Court finds that such omissions in the dispensing of Aldridge's medications were inadvertent and do not rise to the level of deliberate indifference. Aldridge's claim that his medication was changed without consultation with a physician is also without factual basis, as the medical records indicate a consultation between Bill Adams of MCRJ and Dr. Buurman. Finally, Aldridge has failed to show how the alleged medication omissions adversely affected his morbidity or mortality.

With regard to Aldridge's allegations of inadequate treatment of his hypertension, he alleges that his blood pressure was checked haphazardly and without the necessary regularity while he was imprisoned. The evidence of record indicates that Aldridge received blood pressure medication in addition to numerous other medications twice daily. The record also reflects that his blood pressure was checked at least fourteen (14) times, and that on August 13, 1998 the blood pressure reading was significantly lower than the previous reading following a medication change. That it was not monitored every week or every time Aldridge demanded does not indicate that his treatment was inadequate. The defendants are entitled to summary judgment as there is insufficient evidence to show that Aldridge's hypertension constituted a serious medical need, particularly in light of the fact that he was taking hypertension medication at all times during his stay at MCRJ. Aldridge's blood pressure actually improved during his incarceration. At most, the failure to provide more extensive

11

blood pressure monitoring for Aldridge constitutes evidence of negligence, which is insufficient to sustain a claim for deliberate indifference, <u>Horn by Parks v. Madison County Fiscal Court</u>, 22 F.3d 653 (6th Cir. 1994).

Finally, allegations of medical malpractice or negligent diagnosis and treatment do not state a valid claim under §1983. <u>Estelle</u>, 429 U.S. at 106, 97 S.Ct. 285. If a plaintiff has received medical attention, a court will not second-guess the judgment of the medical professionals providing such treatment, <u>Estelle</u> at 107, 97 S.Ct. 285. A plaintiff is not constitutionally entitled to a particular course of treatment on his own assessment of its necessity. A disagreement with the medical treatment does not rise to the level of a constitutional violation, <u>Estelle</u> at 105-106, 97 S.Ct. 285.

Though he disagreed with their approaches, Aldridge did receive medical attention during his incarceration at MCRJ from both Dr. Haley and Dr. Buurman, in addition to follow-up with EMT Bill Adams. In light of the evidence, Aldridge cannot show that the alleged deprivations were sufficiently serious, and he cannot satisfy the objective component of the medical indifference test. Aldridge suggests in his Response that the Court must apply both the objective and subjective test to each defendant. However, this Court's analysis of the objective component is consistent with <u>Napier</u>, and it is unnecessary for the Court to reach the subjective component pertaining to what the MCRJ officials knew and disregarded about Aldridge's medical condition. The objective requirements of seriousness have not been met on the facts of this case. Thus, the Court will not inquire into the subjective component of the test. The facts alleged do not rise to the level of a constitutional violation, and this claim will be dismissed.

Aldridge also claims that his Eighth Amendment right to be free from cruel and unusual punishment was violated by Jailer Gill when Aldridge was placed in an isolation cell. According to the defendants, Aldridge was placed in an isolation cell at MCRJ to accommodate his wish to

12

keep voluminous legal documents in his possession. Aldridge's complaint concedes that he was given the opportunity to move to the general population but refused to do so without his legal documents (Complaint, page 13-14; 20). Prison officials may restrict the accumulation of personal property by prisoners in order to maintain security and to prevent health and fire hazards, and Jailer Gill's Affidavit indicates these were the reasons for giving Aldridge the choice of either surrendering his documents or living in an isolation cell.

Aldridge's continued incarceration in the isolation cell was the result of his conscious choice to continue there, instead of relinquishing his legal papers in order to be housed with the general population. Nonetheless, Aldridge expected the same privileges that accompany general population housing, and his primary complaints with regard to the isolation cell stem from his limited telephone privileges and lack of television compared to those of inmates held in the general population. This Court finds that limited telephone privileges and a lack of television do not rise to the level of cruel and unusual punishment. Accordingly, defendant's Eighth Amendment claim for being held in an isolation cell fails.

To the extent that Aldridge's claims against Jailer Gill are premised upon a theory of supervisory liability, the claims cannot stand. The doctrine of *respondeat superior*, in which liability is predicated solely on the employer-employee relationship, does not apply to civil actions filed under 42 U.S.C. §1983. Hays v. Jefferson County, 668 F.2d 869, 872 (6th Cir. 1982).

B.  Plaintiff's Fourteenth Amendment Claim

Aldridge has also alleged Fourteenth Amendment due process violations for his stay in an isolation cell and for the delay in his transfer as required after 45 days pursuant to KRS 532.100(7). With regard to Aldridge's placement in the isolation cell, it is an undisputed fact that Aldridge was offered a transfer to general population if he would relinquish his legal documents. Defendants have

13

noted that due process considerations involving segregation of inmates require the Court to determine if the segregation imposes an "atypical and significant" hardship on the inmate "in relation to the ordinary incidents of prison life." Jones v. Baker, 155 F.3d 810, 812 (6th Cir. 1998), quoting Sandin v. Conner, 515 U.S. 472, 483 (1995). A liberty interest determination is to be made based on whether it will affect the overall duration of the inmate's sentence, Jones at 812. In the present case, the duration of Aldridge's incarceration was not affected. Nor are there facts sufficient to rise to the level of infliction of an "atypical or significant" hardship upon Aldridge. If there was a significant hardship, it was within Aldridge's power to relinquish the isolation cell and be transferred into the general population. That he chose not to do so cannot be a basis for this Court finding an atypical or significant hardship, and his Fourteenth Amendment claim is dismissed.

Aldridge also claims a Fourteenth Amendment due process and equal protection violation for his being held at MCRJ in excess of the 45 days set forth in KRS 532.100(7), which provides, "State prisoners, excluding the Class D felons and Class C felons qualifying to serve time in county jails, shall be transferred to the state institution within forty-five (45) days of final sentencing." The case law cited by defendants indicates that it is the Commonwealth of Kentucky Corrections Cabinet (now Kentucky Department of Corrections) that has control over the transfer of state prisoners, not county jails. For this reason, Aldridge's Fourteenth Amendment claim against defendant Gill for failure to transfer pursuant to KRS 532.100(7) is dismissed.

      C.      <u>Plaintiff's First Amendment Claim</u>

Aldridge alleges that his First Amendment rights were violated by MCRJ officials as his access to the law library was limited, the photo-copy procedure invaded his privacy, and his conversations with Department of Justice officials were eaves-dropped upon by MCRJ officials.

14

Aldridge contends that his access to the courts was inhibited by his limited access to the jail's law library and by the limited legal materials contained in that library. According to MCRJ records, Aldridge visited the law library twenty-four (24) times, and according to Jailer Gill's affidavit, it contained a wide variety of legal materials including American Jurisprudence, 2nd ed., the updated Criminal Law of Kentucky selected statutes, Kentucky Practice Digest, Baldwin's Kentucky Revised Statutes, Annotated. As noted in Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), an inmate must demonstrate that alleged shortcomings in the library hindered his efforts to pursue a legal claim, or that he suffered some prejudice as a result. Aldridge has failed to make the requisite showing of prejudice, and therefore his claim fails.

Aldridge next alleges that his First Amendment rights were violated because the photo-copy procedure at the jail invaded his privacy. Aldridge's deposition testimony indicates that this complaint stems from a comment that led him to believe that a jailer had read something on a pleading that he had requested be copied pertaining to his civil suit against General Tire (Aldridge Deposition, page 103). Aldridge has not shown that he had a legitimate right to privacy in the documents at issue, particularly as they related to his ongoing civil action and not any action against the jail or its staff. As noted in the case of Thaddeus-X v. Blatter, 175 F.3d 378, 391 (6th Cir. 1999) and cited in defendant's motion, inmates are not guaranteed the right to file all types of legal actions; instead, the inmates are to be provided tools to attack their sentences directly or collaterally, and/or to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration, Id., (quoting Lewis v. Casey, 518 U.S. 343, 355 (1996)). Accordingly, Aldridge's First Amendment violation claim fails.

Finally, Aldridge contends that his First Amendment rights were violated by Jailer Gill when the United States Department of Justice visited the MCRJ in November of 1998 and January of 1999. He alleges that Gill ordered MCRJ officials to refuse to allow private conversations between Aldridge and the Department of Justice investigators. There is no evidence of record to establish any such order on the part of Gill, and the deposition testimony of Aldridge indicates that when asked, the MCRJ official did exit the room. That the MCRJ official later looked through the peephole and was just outside the door are insufficient bases for a First Amendment violation. Furthermore, though the October 19, 1999 Report from the U.S. Department of Justice generally finds that the County violated the First Amendment rights of the inmates at MCRJ by not allowing confidential inmate interviews, this finding is not binding upon this Court. In fact, the testimony of Aldridge would appear to contradict that finding, in that he was interviewed without the presence of a MCRJ official in the room.

IV.     Conclusion

Under the analysis above, the Court has found no constitutional violations in this case and declines to address the issues of qualified immunity and municipal liability. However, it bears mentioning that had constitutional violations been found, the defendants would nonetheless likely be entitled to qualified immunity given the facts of this case.[5] The plaintiff has the burden of establishing that his rights were violated and that the defendants are not entitled to qualified immunity, Wegener v. Covington, 933 F.2d 390, 392 (6th Cir. 1991). In the instant case, the Court

---

[5]This circuit has adopted a three part test to determine whether qualified immunity should be granted: first, a constitutional violation must have occurred; second, the right that was violated must be clearly established such that a reasonable person would be aware of it; finally the plaintiff must allege sufficient facts, supported by sufficient evidence, to indicate that what the official did was objectively unreasonable in light of the clearly established constitutional rights, Dickerson v. McClellan, 101 F.3d 1151, 1157-58 (6th Cir. 1996).

finds that the plaintiff has failed to establish that his constitutional rights were violated by the defendants and further qualified immunity analysis is unnecessary. According to the evidence before this Court, none of the defendants has been shown to have been deliberately indifferent to plaintiff's serious medical needs, to have violated his First or Fourteenth Amendment rights, or to have "knowingly acquiesced" in any unconstitutional conduct by anyone else, see for example Birrell v. Brown, 867 F.2d 956, 958 (6th Cir. 1989). For the foregoing reasons, Aldridge's claims against the defendants are dismissed. An order in conformity with this Memorandum Opinion has this day been entered.